IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Wheeling

**REBECCA L. BROGAN-JOHNSON,**

      Plaintiff,

v.                                   **CIVIL ACTION NO. 5:21-CV-155**
                                          Judge Bailey

**NAVIENT SOLUTIONS, INC.,**

      Defendant.

## MEMORANDUM OPINION AND ORDER DENYING MOTION TO REMAND

Currently pending before this Court is Plaintiff's Motion to Remand [Doc. 5], filed September 10, 2021. The Motion has been fully briefed and is now ripe for decision. For the reasons that follow, the Court will deny the Motion.

## BACKGROUND

This case arises out of a dispute over student loan payments. As set forth in the Amended Complaint, plaintiff incurred student loan debt while pursuing her education at Virginia Tech and later Loyola University School of Law, finishing in May of 2002. [Doc. 1-4 at ¶ 6]. At some later time, defendant became the student loan servicer for those loans. [Id. at ¶ 15]. "The original balance [of the consolidated loans] is listed as $78,322.89. The annual interest rate on the consolidated loans is 3.0%. The repayment term for the consolidated loans is 30 years under a 'Level Payment Plan.'" [Id. at ¶ 16]. On April 10, 2016, defendant sent a letter to plaintiff indicating that her monthly payment would increase from $307.89 to $328.89; defendant did not provide a reason for the increase. [Id. at

1

¶¶ 18–20]. On September 5, 2016, plaintiff filed a complaint with the Consumer Financial Protection Bureau; defendant responded that plaintiff's original interest rate is 4% but that she was receiving a 1% reduction, and that although it calculated payments based on the original rate, it would be willing to recalculate her payment using the discounted rate of 3%. [Id. at ¶ 33]. Nonetheless, defendant continued to bill at the same rate. [Id. at ¶ 34].

On January 17, 2017, plaintiff filed suit in the Circuit Court of Ohio County, West Virginia. See [Doc. 1-1]. Plaintiff alleged three causes of action: first, breach of contract for applying a loan interest rate in excess of the contract interest rate. [Id. at ¶¶ 35–44]. Second, for fraudulent, deceptive, or misleading representations under W.Va. Code § 46A-2-127. [Id. at ¶¶ 45–59]. Third, for unfair or unconscionable debt collection practices in violation of W.Va. Code § 46A-2-128. [Id. at ¶¶ 60–69]. On both of the counts under the West Virginia Consumer Credit and Protection Act ("WVCCPA") plaintiff alleged that each monthly bill received using the incorrect interest rate constituted an additional violation. [Id. at ¶¶ 58 & 69].

In her initial Complaint, plaintiff included a stipulation, signed by herself and by plaintiff's counsel, stating that "she will neither seek nor accept damages in this matter in excess of $75,000, including any award that may be made for attorneys fees. . . . thus barring removal of this matter on diversity ground as the claim does not meet the jurisdictional threshold." [Id. at 15].

On August 2, 2021, over four and a half years after filing the initial Complaint, plaintiff filed a Motion to Amend the Complaint; the amendment sought to remove the $75,000 cap on damages. [Doc. 1-2]. The Circuit Court granted the motion. [Doc. 1-3]. On September 1, 2021, defendant filed a Notice of Removal, removing this case to this

Court on the basis of diversity jurisdiction. [Doc. 1]. Defendant contends that diversity exists because plaintiff is a resident of West Virginia and defendant is a citizen of Delaware. [Doc. 1 at 4–5]. Likewise, the amount in controversy exceeds $75,000. [Id. at 5]. Although the removal in this case is more than one year from the commencement, defendant contends that plaintiff's "manipulation" of its removal rights constitutes bad faith. [Id. at 3].

On September 10, 2021, plaintiff filed the instant Motion. In her memorandum in support, plaintiff argues that removal in this case is untimely under 28 U.S.C. § 1446(c)(1) and that defendant has not shown that the plaintiff has acted in bad faith. While plaintiff does not dispute that the amount in controversy now exceeds $75,000, she argues that the power to stop accruing damages was within the control of defendant, who continued to send the monthly billing statements. [Doc. 6 at 5]. Plaintiff further argues that "the fact that Plaintiff has amended her Complaint in good faith has already been factually established by the Circuit Court of Appeals for Ohio County (sic)" in allowing the amendment. [Id. at 6]. Plaintiff requests this Court award attorneys' fees, costs, and actual expenses incurred as a result of removal. [Id. at 7-8].

In response, defendant argues that, first, plaintiff's original stipulation was effective in preventing removal. [Doc. 7 at 2]. Second, that the amount in controversy did not have to meet the jurisdictional threshold at the time of filing and plaintiff could have alleged greater damages based on the ongoing violations. [Id. at 3–4]. Finally, that the withdrawal of the stipulation, in itself, constitutes bad faith. [Id. at 4–8].

In her reply, plaintiff contends that defendant has failed to demonstrate any act of bad faith. [Doc. 8 at 1].

## **LEGAL STANDARD**

"We begin with the undergirding principle that federal courts, unlike most state courts, are courts of limited jurisdiction, created by Congress with specified jurisdictional requirements and limitations. Accordingly, a party seeking to adjudicate a matter in federal court must allege and, when challenged, must demonstrate the federal court's jurisdiction over the matter. If a plaintiff files suit in state court and the defendant seeks to adjudicate the matter in federal court through removal, it is the defendant who carries the burden of alleging in his notice of removal and, if challenged, demonstrating the court's jurisdiction over the matter." ***Strawn v. AT&T Mobility***, 530 F.3d 293, 296 (4th Cir. 2008) (citations omitted).

Defendants in civil actions may remove a matter from state to federal court if the latter forum has original subject matter jurisdiction. This requirement can be based upon diversity jurisdiction or federal question jurisdiction. 28 U.S.C. § 1441. A federal district court has diversity jurisdiction over cases between citizens of different states where the amount in controversy exceeds $75,000.00, exclusive of interest and costs. 28 U.S.C. § 1332. Further, a federal district court has federal question jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331. This particular jurisdiction must inhere in the plaintiff's claim, rather than be based on a defense or counterclaim. ***Louisville & Nashville R.R. v. Mottley***, 211 U.S. 149 (1908).

Federal courts "are obliged to construe removal jurisdiction strictly because of the 'significant federalism concerns implicated.' Therefore, 'if federal jurisdiction is doubtful, a remand to state court is necessary.'" **Maryland Stadium Auth. v. Ellerbe Becket Inc.**, 407 F.3d 255, 260 (4th Cir. 2005) (quoting **Mulcahey v. Columbia Organic Chems. Co.**, 29 F.3d 148, 151 (4th Cir. 1994)); see also **Healy v. Ratta**, 292 U.S. 263, 270 (1934) ("Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined.").

Defendants seeking removal bear the burden of demonstrating that jurisdiction is proper. See **Strawn**, 530 F.3d at 296–97. "While a defendant filing a notice of removal under 28 U.S.C. § 1446(a) need only *allege* federal jurisdiction in a short plain statement—just as federal jurisdiction is pleaded in a complaint—when removal is challenged, the removing party bears the burden of *demonstrating* that removal jurisdiction is proper." **Id**. at 297 (citing **Ellenburg v. Spartan Motors Chassis, Inc.**, 519 F.3d 192, 200 (4th Cir. 2008)); see also **Dart Cherokee Basin Operating Co. v. Owens**, 574 U.S. 81, 88-89 (2014) (when challenged, defendant must show that removal is proper by preponderance of the evidence).

## DISCUSSION

Under 28 U.S.C. § 1332(a)(1), federal courts have jurisdiction in civil actions where the amount in controversy exceeds $75,000 and is between citizens of different states. However, a case may not be removed on the basis of diversity "more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in

bad faith in order to prevent a defendant from removing the action." 28 U.S.C. § 1446(c)(1).

First, the Court notes that the requirements of 28 U.S.C. § 1332(a) are met. It is undisputed that there is complete diversity among the parties and that the damages now-alleged exceed $75,000; if the case were filed today, there is no question that it would be removable.

Second, the Notice of Removal is outside the one-year period set by 28 U.S.C. § 1446(c)(1). The original Complaint was filed on January 17, 2017, and the Notice of Removal was filed September 1, 2021.

Third, the case was not removable prior to the recent amendment to the Complaint. Plaintiff's original Complaint included a stipulation, signed by plaintiff and plaintiff's counsel, limiting damages in excess of $75,000, and intended by plaintiff to be binding: "It is the Plaintiff's intent that this Stipulation comply with the requirements set forth in *Sherry Asbury-Casto v. GlaxoSmithKline Inc.*, (5:04CV111, N.D. W.Va. 2005), *McCoy v. Erie Ins. Co.*, 147 F.Supp. 2d 481, 485 (S.D. W.Va. 2001), *Virden v. AltriaGroup, Inc.*, 304 F.Supp.2d 832, 847 (N.D. W.Va. 2004) and *Strawn v. AT & T Mobility, Inc.*, 513 F.Supp.2d 599, 608 (S.D. W.Va. 2007), thus barring the removal of this matter on diversity grounds as the claim does not meet the jurisdictional threshold." [Doc. 1-1 at 15]. Such stipulations are effective in preventing removal. See *McCoy*, 147 F.Supp.2d at 485 ("a formal, truly binding, pre-removal stipulation signed by counsel and his client explicitly limiting recovery" may prevent removal.).

Accordingly, the issue for the instant Motion is whether this Court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action. As Judge Goodwin recently observed:

> The Fourth Circuit has not set the exact contours of what types of litigation behavior will amount to bad faith. This is only to be expected; "bad faith" is "quintessential subjective standard language." *Aguayo v. AMCO Ins. Co.*, 59 F. Supp. 3d 1225 (D. N.M. Oct. 31, 2014). What is clear—as I have previously stated—is that a defendant arguing for the bad faith exception to apply faces "an arduous burden that requires the defendant to put forth evidence of forum manipulation." *Ramirez v. Johnson & Johnson*, No. 2:15-cv-09131, 2015 U.S. Dist. LEXIS 102967, at *7. Using legitimate litigation strategy to avoid federal jurisdiction is not necessarily indicative of bad faith or forum manipulation. *See Massey v. 21st Century Centennial Ins. Co.*, No. 2:17-cv-01922, 2017 WL 3261419, at *4 (S.D. W.Va. July 31, 2017); *Hackney v. Golden Girl*, No. 3:16-cv-06569, 2016 WL 6634898, at *2 (S.D. W.Va. Nov. 8, 2016).

*Mullins v. Rish Equipment Company*, No. 2:21-CV-00347, 2021 WL 4448296, at *2 (S.D. W.Va. Sept. 28, 2021) (Goodwin, J.).

> Despite lacking a definitive test for bad faith, Fourth Circuit district courts routinely evaluate bad faith under § 1446(c)(1) by determining whether plaintiffs engaged in forum manipulation specifically to prevent removal. *See, e.g., Johnson [v. HCR Manorcare LLC]*, No. 1:15-cv-00189, 2015 WL

7

6511301, at *4 [(N.D. W.Va. Oct. 28, 2015) (Keeley, J.)] (quoting **Ramirez v. Johnson & Johnson**, No. 2:15-cv-09131, 2015 WL 4665809, at *3 (S.D. W.Va. Aug. 6, 2015)) (stating that to prove bad faith, a defendant must "bear[ ] an arduous burden that requires evidence of forum manipulation"); see also **White v. Lexington Court Apartments, LLC**, No. 8:16-cv-00427, 2016 WL 1558340, at *3–4 (D. Md. Apr. 18, 2016) (ruling that removal was untimely because the plaintiffs' alleged bad faith acts were not taken to prevent removal); **Mansilla-Gomez v. Mid-S. Erectors, Inc.**, No. 0:14-cv-00308, 2014 WL 1347485, at *2 (D.S.C. Apr. 3, 2014) (finding that removal was untimely because factors other than preventing removal may have motivated the plaintiff's actions).

**Shorraw v. Bell**, No. 4:15-CV-03998-JMC, 2016 WL 3586675, at *5 (D.S.C. July 5, 2016) (Childs, J.). "Additionally, the court notes that is not inherently bad faith to use strategy to defeat federal jurisdiction." **Brazell v. Gen. Motors, LLC**, No. CA 6:14-4588-TMC, 2015 WL 1486932, at *4 (D.S.C. Mar. 30, 2015) (Cain, J.) (citations omitted).

The bad faith exception applies when a plaintiff deliberately delays to prevent defendants from knowing the amount in controversy exceeds $75,000. **Brown v. Wal-Mart Stores, Inc.**, No. 5:13CV00081, 2014 WL 60044, at *2 (W.D. Va. Jan. 7, 2014) (Urbanski, J.) (delay in removal justified under bad faith exception where plaintiff "delayed serving process on Wal–Mart for nine months. Brown then failed to respond to a settlement inquiry or provide answers to discovery aimed at determining the amount in controversy until after the one year anniversary of filing suit."); see **Schwenk v. Cobra Mfg. Co.**, 322

8

F.Supp.2d 676, 679 (E.D. Va. 2004) (Morgan, J.) (finding bad faith where "Plaintiff's counsel candidly admitted that he intended to amend the *ad damnum* clause of the Motion for Judgment at some future date to an amount in excess of $75,000.").

In contrast, "[a] plaintiff is not acting in bad faith if he or she crafts his or her complaint to avoid federal jurisdiction." ***Hackney v. Golden Girl, Inc.***, No. CV 3:16-06569, 2016 WL 6634898, at *3 (S.D. W.Va. Nov. 8, 2016) (Chambers, J.) (citing ***Aguayo v. AMCO Ins. Co.***, 59 F.Supp.3d 1225, 1273 (D. N.M. 2014)). Likewise, it is not inherently bad faith for a plaintiff to make a litigation decision after the one-year limit that would otherwise give rise to diversity jurisdiction. *See* ***McDonald-Lerner v. Neurocare Assocs., P.A.***, No. RWT 14-CV-0942, 2014 WL 1356602, at *1 (D. Md. Apr. 4, 2014) (Titus, J.) (Court found bad faith exception did not apply where plaintiffs decided to dismiss non-diverse defendants after learning defendant doctor was not insured.).

Plaintiff, in her original Complaint, alleged that defendant's monthly bills constituted continuing unfair or unconscionable debt collection practices under W.Va. Code § 46A-2-128. [Doc. 1-1 at ¶ 69]. Plaintiff contends that at the time of filing that Complaint, she fully anticipated that her total damages would be less than $75,000. [Doc. 6 at 2]. Because the monthly billing statements have continued through the four and a half years this case has been ongoing, plaintiff amended her Complaint to remove the cap on damages. [Id. at 5]. The change in alleged damages is a result of alleged wrongful conduct *after* the filing of the initial Complaint.

Defendant points out that plaintiff was not limited to pleading damages that existed at the time of filing, and presumably could have plead anticipated ongoing damages that

9

would put the amount in controversy above $75,000. [Doc. 7 at 4]. Even so, defendant has failed to show that it was bad faith to plead damages as they then existed.

Next, defendant argues that the very act of withdrawing the stipulation constitutes bad faith. This Court agrees. Indeed, "while the Rules establish a permissive amendment standard, allowing the amendment of a binding stipulation would render such jurisdictional stipulations merely advisory, expanding the very 'potential for abuse' the stipulations are meant to foreclose." **Webb v. Cent. Fla. Invs., Inc.**, No. 5:18-CV-01304, 2020 WL 6948087, at *4 (S.D. W.Va. Nov. 25, 2020) (Volk, J.) (quoting **McCoy**, 147 F.Supp.2d at 485). As the Supreme Court has observed,

> Stipulations must be binding. See 9 J. Wigmore, Evidence § 2588, p. 821 (J. Chadbourn rev.1981) (defining a "judicial admission or stipulation" as an "express waiver made . . . by the party or his attorney conceding for the purposes of the trial the truth of some alleged fact" (emphasis deleted)); **Christian Legal Soc. Chapter of Univ. of Cal., Hastings College of Law v. Martinez**, 561 U.S. [661, 667] (2010) (describing a stipulation as "'binding and conclusive'" and "'not subject to subsequent variation'" (quoting 83 C.J. S., Stipulations § 93 (2000))); 9 Wigmore, supra, § 2590, at 822 (the "vital feature" of a judicial admission is "universally conceded to be its conclusiveness upon the party making it").

**Standard Fire Ins. Co. v. Knowles**, 568 U.S. 588, 592 (2013). This Court finds that the plaintiff acted in bad faith in reneging on the damages stipulation. Plaintiff's stipulation made clear that plaintiff intended to be bound to its limitation on damages. The strategic

tradeoff of such a stipulation is clear: plaintiff forwent the possibility of damages in excess of $75,000 in exchange for preventing removal. Plaintiff, having now squirmed out of the cost of such a bargain, seeks to hold on to the benefit. This is the exact kind of "potential for abuse" the Court was concerned with in *McCoy*. If plaintiffs are somehow able to shed this type of stipulation and still avoid removal, the result will be that defendants in any case with this kind of stipulation must remove the case and argue that the plaintiff might not *truly* be bound to their pre-removal word. This would defeat the purpose of jurisdictional stipulations and force parties to argue the very issue the stipulation was meant to settle.

Plaintiff argues that Navient should not be able to remove this case when the increased damages are a result of its own conduct: "Although the Plaintiff alleged [in the original Complaint] a continuing violation by Navient based on its monthly billing statements that required the Plaintiff to make payments based on an unauthorized interest repayment rate, the power to stop accruing damages for that continuing violation was – and is – within the complete control of Navient. Now, after over 4 and ½ years of continuously violating the WVCCPA, the Plaintiff's statutory damages and attorney's fees have increased above the $75,000.00 damage stipulation threshold." [Doc. 6 at 5]. In the original Complaint, plaintiff alleged that each monthly bill constitutes an unfair or unconscionable debt collection practice. [Doc. 1-1 at ¶ 69]. The possibility that those monthly bills would continue until the damages exceeded the stipulated threshold was a risk plaintiff was taking when she entered her stipulation. Plaintiff similarly argues that "[a] failure of the Circuit Court to allow the Plaintiff to amend her Complaint would have provided Navient the perverse incentive to continue litigation by attrition as the Plaintiff's post-complaint attorneys' fees, and damages owed to her for its on-going, post-Complaint WVCCPA

11

violations, would continue to accrue without further monetary liability." [Doc. 8 at 3]. To the extent plaintiff is arguing she should have been allowed to amend her Complaint, that point is moot since the Circuit Court already allowed the amendment and plaintiff is no longer limited to $75,000 in damages.

Further, the Court is unpersuaded by plaintiff's argument that the Circuit Court of Ohio County already ruled upon the issue of bad faith. The Order Granting Leave to Amend the Complaint quickly recites that leave to amend a complaint shall be freely given and grants the Motion to Amend. *See* [Doc. 1-3]. There is no indication that the Circuit Court considered the issue of whether abandoning the stipulation was bad faith, and defendant had no opportunity to respond to the Motion.

Because the Court finds that plaintiff acted in bad faith in order to prevent removal, the Motion to Remand should be denied.

## CONCLUSION

For the aforementioned reasons, Plaintiff's Motion to Remand [**Doc. 5**] is hereby **DENIED**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED**: October 6, 2021.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE