IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Wheeling

**REBECCA L. BROGAN-JOHNSON,**

Plaintiff,

v. **CIVIL ACTION NO. 5:21-CV-155**
Judge Bailey

**NAVIENT SOLUTIONS, INC.,**

Defendant.

## MEMORANDUM OPINION AND ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

Currently pending before this Court are Plaintiff's Second Motion for Summary Judgment[1] [Doc. 19], filed November 30, 2021, and Navient Solutions, LLC's Response to Plaintiff's Motion for Summary Judgment and Cross-Motion for Summary Judgment [Doc. 23], filed December 23, 2021. The motions are fully briefed and ripe for decision. For the reasons that follow, the Court will grant Navient's Motion for Summary Judgment.

## BACKGROUND

This case arises out of a dispute over student loan payments. As set forth in the Amended Complaint, plaintiff incurred student loan debt while pursuing her education at Virginia Tech and later Loyola University School of Law, finishing in May of 2002. [Doc. 1-4 at ¶ 6]. In February 2003, two of plaintiff's loans were consolidated into one, with a total

[1]The Court notes that this is plaintiff's first motion for summary judgment filed before this Court; however, an earlier motion for summary judgment was filed in the Circuit Court of Ohio County.

balance of $72,431.93. [Id. at 13]. The amended Complaint alleges that "After 12 months of on-time payments, the Plaintiff's interest rate dropped to 3.0%, starting with the payment due on January 8, 2004." [Id. At 14]. The details of that change in interest rate are in dispute in the instant motions. The parties agree that there was an incentive rate offer from Collegiate Funding Services; the parties likewise agree that, whatever the details of the offer, Navient Solutions, Inc. ("Navient") became the servicer of plaintiff's loans and honored the claimed incentive rate of 3%, and plaintiff's loans accumulated interest at that rate.

On April 10, 2016, Navient sent a letter to plaintiff indicating that her monthly payment would increase from $307.89 to $328.89; Navient did not provide a reason for the increase. [Doc. 1-4 at ¶¶ 18–20]. On September 5, 2016, plaintiff filed a complaint with the Consumer Financial Protection Bureau; Navient responded that plaintiff's original interest rate is 4% but that she was receiving a 1% reduction, and that although it calculated payments based on the original rate, it would be willing to recalculate her payment using the discounted rate of 3%. [Id. at ¶ 33]. Nonetheless, Navient continued to bill at the same rate. [Id. at ¶ 34].

On January 17, 2017, plaintiff filed suit in the Circuit Court of Ohio County, West Virginia. *See* [Doc. 1-1]. Plaintiff alleged three causes of action: first, breach of contract for applying a loan interest rate in excess of the contract interest rate. [Id. at ¶¶ 35–44]. Second, for fraudulent, deceptive, or misleading representations under W.Va. Code § 46A-2-127. [Id. at ¶¶ 45–59]. Third, for unfair or unconscionable debt collection practices in violation of W.Va. Code § 46A-2-128. [Id. at ¶¶ 60–69]. On both of the counts under the West Virginia Consumer Credit and Protection Act ("WVCCPA"), plaintiff alleged that each

monthly bill received using the incorrect interest rate constituted an additional violation. [Id. at ¶¶ 58 & 69].

In her initial Complaint, plaintiff included a stipulation, signed by herself and by plaintiff's counsel, stating that "she will neither seek nor accept damages in this matter in excess of $75,000, including any award that may be made for attorneys fees. . . . thus barring removal of this matter on diversity ground as the claim does not meet the jurisdictional threshold." [Id. at 15].

On August 2, 2021, over four and a half years after filing the initial Complaint, plaintiff filed a Motion to Amend the Complaint; the amendment sought to remove the $75,000 cap on damages. [Doc. 1-2]. The Circuit Court granted the motion. [Doc. 1-3]. On September 1, 2021, Navient filed a Notice of Removal, removing this case to this Court on the basis of diversity jurisdiction. [Doc. 1].

On September 10, 2021, plaintiff filed a Motion to Remand [Doc. 5]. Plaintiff argued that the Notice of Removal was untimely. On October 6, 2021, this Court denied the Motion to Remand, finding that although the Notice of Removal was filed outside the one-year period set by 28 U.S.C. § 1446(c)(1), the Court found that the plaintiff had acted in bad faith to prevent removal by withdrawing the stipulation capping damages at $75,000.

On November 11, 2021, Navient filed a Motion to Enforce Binding Jurisdictional Damages Stipulation Limiting Damages Entered Into by Plaintiff and Plaintiff's Counsel. [Doc. 14]. The gist of that motion was that, although Navient had successfully removed the case to this Court on the basis of diversity jurisdiction, they now sought to re-institute the pre-removal cap on damages. This Court denied that Motion. [Doc. 18].

On November 30, 2021, plaintiff filed the instant motion for summary judgment. In her memorandum in support, plaintiff argues that Navient breached the student loan repayment contract by billing her at 4.0%. Plaintiff argues that Navient has admitted, through the affidavit of James M. Austin, a Senior Account Analyst at Navient, that: "(a) the Plaintiff's repayment rate was 3.0%, (b) that her 3.0% repayment rate complied with an applicable federal regulation, (c) that her loan is currently scheduled to be fully paid *before* the end of her contractual repayment term, (d) that there was not any federal prohibition to Navient actually billing the Plaintiff based on her contract rate, and (e) that it had no knowledge of the terms of the Plaintiff's 2002 loan consolidation repayment agreement." [Doc. 20 at 6, citing Doc. 20-6]. While plaintiff concedes that "neither party has the written contractual terms of her incentive rate offer," she contends that she has supported her assertion of th 3.0% rate through her own affidavit, the course of dealing on the last fourteen years of the loan, and the fact that the terms asserted by plaintiff "are 100% consistent with the student loan servicing instructions issued by the Department of Education at the time the Plaintiff consolidated her student loans." [Id. at 7]. Plaintiff argues that by billing her based on a loan with 4% interest rate, Navient has breached the contract and violated the WVCCPA.

In its response and cross motion, Navient argues that plaintiff's claims are ripe for dismissal because she is unable to show the written agreement she claims set the 3% interest rate. It claims that "based on prior account statements and [Navient's] general familiarity with such voluntary incentive programs offered by servicers, [Navient] honored the claimed incentive rate [(3%)] as a courtesy and has calculated the accumulation of interest on the Loan at the incentive interest rate of 3.00% ever since it began servicing the

Loan in 2011." [Doc. 24 at 3–4]. Navient claims that the 2016 increase in monthly payment occurred because it calculated plaintiff's monthly payment based on her consolidated interest rate (which it contends was 4%) despite the fact that the amount of interest accumulating on the loan continued to be 3%. [Id. at 4]. Navient argues that "to prove breach of contract, Plaintiff must first proffer the contract in question, including the specific terms Plaintiff alleges [Navient] breached." [Id. at 9]. Navient contends that under Federal Rule of Evidence 1002, plaintiff is required to provide the contract to prove its contents; having failed to do so, it claims plaintiff has failed to meet her burden. [Id. at 10]. For the same reasons, it argues that plaintiff's WVCCPA claims based on incorrect billing fail. [Id. at 12]. Finally, Navient argues that the WVCCPA claims based on failures of Navient to provide disclosures are preempted by 20 U.S.C. § 1098g. [Id. at 13].

## LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. *See* ***Celotex Corp. v. Catrett***, 477 U.S. 317, 322–23 (1986). If the moving party meets this burden, the nonmoving party "may not rest upon the mere allegations or denials of its pleading, but must set forth specific facts showing there is a genuine issue for trial." ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 248 (1986). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict

for the nonmoving party." ***Id.*** "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." ***Id.*** at 250.

In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. *See* ***Matsushita Elec. Indus. Co. v. Zenith Radio Corp.***, 475 U.S. 574, 587 (1986). Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." ***Id.*** at 586. That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. Fed. R. Civ. P. 56(c); ***Celotex Corp.***, 477 U.S. at 323–25; ***Anderson***, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." ***Anderson***, 477 U.S. at 249 (citations omitted). Although all justifiable inferences are to be drawn in favor of the non-movant, the non-moving party "cannot create a genuine issue of material fact through mere speculation of the building of one inference upon another." ***Beale v. Hardy***, 769 F.2d 213, 214 (4th Cir. 1985). Further, "the plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." ***Celotex Corp.***, 477 U.S. at 322.

When cross-motions for summary judgment are before a district court, as here, the same standards of review are applied. ***ITCO Corp. v. Michelin Tire Corp.***, 722 F.2d 42, 45 n.3 (4th Cir. 1983). Each motion must be considered individually on its own merits, and the facts relevant to each must be viewed in the light most favorable to the non-movant. ***Mellen v. Bunting***, 327 F.3d 355, 363 (4th Cir. 2003) (citing ***Rossignol v. Voorhaar***, 316 F.3d 516, 523 (4th Cir. 2003)). When considering each individual motion, the court must take care to "resolve all factual disputes and any competing, rational inferences in the light most favorable" to the party opposing that motion. ***Rossignol***, 316 F.3d at 523 (quoting ***Wightman v. Springfield Terminal Ry. Co.***, 100 F.3d 228, 230 (1st Cir. 1996)).

**DISCUSSION**

In plaintiff's memorandum in support of her motion, plaintiff lists undisputed facts, including "3. The Plaintiff's repayment rate is 3.0%." [Doc. 20 at 9]. On the other hand, in Navient's memorandum responding to plaintiff's motion and in support of its own cross-motion, Navient contends that when plaintiff's loans were consolidated "[t]he interest rate on the Loan was set at 4.00%." [Doc. 23 at 3]. The details of the incentive rate offer are thus critical: under plaintiff's version of events, the incentive rate offer caused a permanent decrease in the interest rate. *See* [Doc. 20-2 at 4]. In contrast, Navient, through the affidavit of James M. Austin, claims that the incentive program benefit rate of 3% could revert back to the original rate of 4% "if she did not maintain eligibility for the incentive program benefit rate or otherwise suspend repayment by utilizing deferment or forbearance options." [Doc. 23-7 at 3]. As plaintiff acknowledges, "neither party has the written contractual terms of [the] incentive rate offer." [Doc. 20 at 7].

Under Federal Rule of Evidence Rule 1002, "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise." "As the Rule's language states, the Rule applies to the circumstance where the proponent seeks 'to prove the content' of a document. The Rule exists to afford guarantees against inaccuracies and fraud by requiring that the original of the document be offered, subject to exceptions in Rule 1003 (allowing the use of duplicates) and Rule 1004 (providing exceptions to the requirement of an original)." ***United States v. Smith***, 566 F.3d 410, 413 (4th Cir. 2009).

"Pursuant to Federal Rule of Evidence 1004, '[t]he original is not required, and other [secondary] evidence of the contents of a writing, recording, or photograph is admissible if ... [a]ll originals are lost or destroyed, unless the proponent lost or destroyed them in bad faith ....' Fed. R. Evid. 1004(1).[2] 'The proponent of the secondary evidence has the burden of proving loss or destruction, which are preliminary facts for the court to determine under Rule 104(a). Thus, the proponent must show by a preponderance of the evidence that all originals have been lost or destroyed. This means that the burden is not sustained where the proponent merely casts doubt as to the existence of the original.' Wright & Gold, Federal Practice and Procedure: Evidence § 8014. As the Fourth Circuit once explained, 'the party who offers secondary evidence of the contents of a document alleged to be lost must go farther than to show that it is doubtful whether or not the document exists; he must demonstrate to the satisfaction of the court that although it once existed, it cannot be found

---

[2]The Court notes that the wording of Fed. R. Evid 1004(a) has been slightly changed since the above-quote, and now reads that the evidence is admissible if "all the originals are lost or destroyed, and not by the proponent acting in bad faith."

despite a diligent and unsuccessful search and that there is no reasonable probability that it has been designedly withheld or suppressed.' ***Sellmayer Packing Co. v. Commissioner***, 146 F.2d 707, 710 (4th Cir. 1944)." ***Automated Merch. Sys., Inc. v. Crane Co.***, No. 3:03-CV-88(L), 2012 WL 12892417, at *2 (N.D. W.Va. Feb. 28, 2012) (Bailey, J.).

Plaintiff has asserted claims for breach of contract and violations of the WVCCPA, both based on the terms established by the incentive rate offer. Accordingly, her claims hinge on the contents of that offer. Therefore, she must produce the original unless she can establish an exception to the "original document rule." This Court finds that plaintiff has failed to do so; plaintiff has not shown that "all the originals are lost or destroyed," or any of the other listed exceptions under Federal Rule of Evidence Rule 1004.

Plaintiff argues that the application of the original document rule supports her own position: she contends that Navient "is the party that sought to upset the status quo by asserting an unknown contractual term regarding Plaintiff's repayment rate of interest." [Doc. 25 at 2]. She contends that the rule is not at issue for her own claims, but that it is "at issue for Navient insofar as it may seek to justify its purported hypothetical future action of terminating the Plaintiff's 3.0% repayment rate should she ever default on her loan payments." [Id. at 7]. In making this argument, plaintiff seeks to turn the burden of proof on its head: she is the one asserting claims for breach of contract and for violations of the WVCCPA based on terms set by the incentive rate offer. She is unable to show the terms set by the incentive program she now seeks to enforce. In addition, the amount of interest actually accumulating on the loan continues to be 3.0%, and this Court finds that she is

therefore unable to establish damages. Accordingly, the Court finds that summary judgment in favor of Navient is therefore appropriate.

**CONCLUSION**

For the aforementioned reasons, Plaintiff's Second Motion for Summary Judgment [**Doc. 19**] is hereby **DENIED**, Navient Solutions, LLC's Response to Plaintiff's Motion for Summary Judgment and Cross-Motion for Summary Judgment [**Doc. 23**] is hereby **GRANTED**, and this case is hereby **DISMISSED WITH PREJUDICE**. The Court hereby **DIRECTS** the Clerk to **STRIKE** this matter from the active docket of this Court and enter judgment in favor of defendant.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED**: February 17, 2022.

**JOHN PRESTON BAILEY**
**UNITED STATES DISTRICT JUDGE**